**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

|  |  |  |
|---|---|---|
| | * | |
| **VINCENT HEARN,** | * | |
| **Plaintiff,** | | |
| | * | |
| **v.** | | **Case No.: GJH-21-2259** |
| | * | |
| **EDGY BEES INC.,** *et al.*, | | |
| **Defendants.** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**<u>MEMORANDUM OPINION</u>**

In this action, Plaintiff Vincent Hearn brings breach of contract claims, Maryland wage claims, and discrimination claims against Defendants Edgy Bees Inc. and Adam Kaplan. ECF No. 1. Presently pending is Defendant Edgy Bee Inc.'s Partial Motion to Dismiss, ECF No. 13, and Defendant Kaplan's Motion to Dismiss, ECF No. 22. No hearing is necessary.[1] *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated below, the Court will grant both motions.

**I.     BACKGROUND[2]**

At the relevant time, Plaintiff Hearn was an Arizona resident. ECF No. 1 ¶ 1.[3] Defendant Edgy Bees Inc. is a Delaware corporation authorized to do business in Maryland as a foreign corporation. *Id.* ¶ 2. Edgy Bees' principal places of business are in Maryland and in Israel. *Id.* ¶

---

[1] Plaintiff's Request for a Hearing, ECF No. 20, is denied.

[2] Unless otherwise stated, the facts are taken from Plaintiff's Complaint, ECF No. 1, and presumed true.

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

4. Defendant Kaplan is a resident of Israel and, at the relevant time, the Chief Executive Officer of Edgy Bees. *Id.* ¶ 3.

Plaintiff is a United States Air Force retiree and Purple Heart recipient. *Id.* ¶ 7. Prior to his employment with Edgy Bees, Plaintiff had a civil career in federal contracting. *See id.* ¶¶ 11, 12. Plaintiff also had an expansive list of contacts at the Department of Defense and years of experience in government contract administration and management. *Id.* ¶ 18. Plaintiff applied for a position as a Business Development Director at Edgy Bees in September 2019. *Id.* ¶ 14. Plaintiff met with Defendant Kaplan in San Diego, California, in October 2019 when Kaplan interviewed Plaintiff for the position. *Id.* ¶ 15. Plaintiff then flew to Israel to meet with additional Edgy Bees employees. *Id.* ¶ 16.

Plaintiff was hired effective November 1, 2019. *Id.*; *see also* ECF No. 1-1 (Offer Letter). Plaintiff and Defendants agreed to an Individualized Compensation Plan, which governed non-discretionary payment of commission based on contract proceeds. ECF No. 1 ¶ 20; *see also* ECF No. 1-2 (Individualized Compensation Plan). Plaintiff was also provided with the Sales Compensation Plan. *Id.* ¶ 23; *see also* ECF No. 1-3 (Sales Compensation Plan).[4]

In July 2020, because of Plaintiff's hard work and skills, Edgy Bees was awarded a $12 million government contract. *Id.* ¶¶ 33, 39, 42. However, despite this success, Plaintiff alleges that he was treated poorly compared with other employees. *Id.* ¶¶ 26, 27. Plaintiff alleges that Defendant Kaplan subjected him to verbal abuse, that Kaplan regularly called and texted him at odd hours, and that Kaplan denied Plaintiff's request to telework while on vacation when another employee was granted the same request. *Id.* ¶ 26. Plaintiff was not provided with a company

---

[4] The Offer Letter, the Individualized Compensation Plan, and the Sales Compensation Plan were attached to the Complaint, ECF Nos. 1-1, 1-2, 1-3, and are properly considered by the Court in ruling on the Motion to Dismiss, *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

credit card, causing him to incur substantial expenses while he waited for reimbursement. *Id.* ¶ 27. Plaintiff also alleges that Defendant Kaplan would frequently cancel meetings with him, *id.* ¶ 44, and that after employees were asked to defer wages, all other employees shortly returned to regular wages, while Plaintiff did not, *id.* ¶ 45. Plaintiff asserts that some of these actions were taken because of his race. *Id.* ¶¶ 79, 119. Plaintiff also discovered that Edgy Bees was violating various federal contractor regulations and its contract with the United States government. *Id.* ¶¶ 52, 62, 63, 66, 72.

Throughout the summer and fall of 2020, Plaintiff raised his discrimination and compliance concerns to other Edgy Bees employees and managers. *Id.* ¶¶ 50, 51, 66, 74. Edgy Bees was unresponsive to Plaintiff's concerns. *Id.* ¶ 67. A job posting with the description matching Plaintiff's position was posted in December 2020, and Edgy Bees hired a white employee. *Id.* ¶ 74. Plaintiff was further excluded from meetings, *id.*, and when Plaintiff received commissions payments related to his contract work, the commissions were less than prescribed by agreement, *id.* ¶ 83.

Plaintiff was fired at Defendant Kaplan's direction on January 7, 2021. *Id.* ¶ 81. Edgy Bees did not provide a reason for the termination. *Id.* ¶ 82. At the time of termination, Plaintiff was working on several pending deals. *Id.* ¶ 86. Plaintiff was one of only two black employees at the company, and the other black employee was also terminated. *Id.* ¶¶ 79, 80. Edgy Bees also improperly eliminated 56 hours of Plaintiff's paid time off and has not paid Plaintiff his deferred wages. *Id.* ¶¶ 45, 83, 85.

Plaintiff filed the Complaint on September 2, 2021. ECF No. 1. Plaintiff brought claims asserting breach of contract, breach of implied good faith and fair dealing, quantum meruit, unjust enrichment, violation of Montgomery County Code § 27-19, and violation of the False

Claims Act, 31 U.S.C. § 3730(h)(1), against Defendant Edgy Bees. *See id.* ¶¶ 94, 100, 107, 112, 141. Plaintiff also brought claims under the Maryland Wage Payment and Collection Law, Ann. Code of Maryland, Labor & Employment Article, § 3–501 *et seq.*, violation of 42 U.S.C. § 1981 for discrimination on the basis of race and/or color, and violation of 42 U.S.C. § 1981 on the basis of retaliation against Defendants Edgy Bees and Kaplan. *See id.* ¶¶ 115, 119, 126.

Defendant Edgy Bees filed the Partial Motion to Dismiss on October 7, 2021. ECF No. 13. Edgy Bees asserts that Counts V (Maryland wage violations), VIII (Montgomery County code violations), and IX (False Claims Act retaliation) must be dismissed for failure to state a claim. *Id.* Defendant Kaplan filed a Motion to Quash Service and Dismiss the Complaint on October 27, 2021. ECF No. 22. Kaplan argues that service of process was improper, that the Court lacks personal jurisdiction over him, and that the Complaint fails to state a claim as to Count V against Kaplan. *Id.*

## II.      STANDARD OF REVIEW

Defendants seek dismissal on multiple grounds and the Court will articulate the standards used to address each motion.

### A.  Failure to State a Claim

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint." and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). To survive a motion to dismiss invoking Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must be more than "labels and

conclusions . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. "[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"[.]" *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, 235–36 (3d ed. 2004)).

### B.  Insufficient Process

Defendants may also challenge the sufficiency of process under Fed. R. Civ. P. 12(b)(4). *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006). Following such a motion, Plaintiffs bear the burden of establishing the validity of service under Federal Rule of Civil Procedure 4. *Id.* The Fourth Circuit has provided that in cases where service of process has given a defendant actual notice of the claim against it, courts may adopt a liberal interpretation of Rule 4 and "uphold the jurisdiction of the court." *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963). While the "plain requirements for the means of effecting service of process may not be ignored," where the defendant has actual notice of the action, "every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Armco, Inc. v. Penrod-Stauffer Bldg Sys. Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).

### C.  Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction arises under Federal Rule of Civil Procedure 12(b)(2). "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (citation omitted). Discovery and an evidentiary hearing are not required to resolve a motion under Rule 12(b)(2), however.

*See id.* Rather, the Court may, in its discretion, address personal jurisdiction as a preliminary matter, ruling solely on the motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). In such a circumstance, the plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Engineers Corp.*, 561 F.3d at 276. "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs. Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993)).

## III.    DEFENDANT EDGY BEES INC.'S PARTIAL MOTION TO DISMISS

Defendant Edgy Bees has filed a Partial Motion to Dismiss seeking dismissal of Counts V (violation of the Maryland Wage Payment and Collection Law), VIII (violation of Montgomery Count Code), and IX (violation of the False Claims Act). *See* ECF No. 13. The Court will grant the Motion, and thus Counts V, VIII, and IX against Defendant Edgy Bees are dismissed.

### A.  Maryland Wage Payment and Collection Law Claim

Defendant Edgy Bees first argues that Count V, violation of the Maryland Wage Payment and Collection Law ("MWPCL"), must be dismissed because the MWPCL has no extraterritorial effect and Plaintiff lived and worked in Arizona for the duration of his employment. *See* ECF No. 13 at 9. Plaintiff responds that Edgy Bees' Maryland office was his base of employment, making him a Maryland employee entitled to Maryland law protections. *Id.* at 8.

The MWPCL provides that "each employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment[.]" Md. Code Ann.,

Lab. & Empl. § 3-505(a). The MWPCL "defines 'employer' to 'include[ ] any person who employs an individual in the State[.]'" *Himes Assocs., Ltd. v. Anderson*, 178 Md. App. 504, 535, 943 A.2d 30, 48 (2008) (quoting Md. Code Ann., Lab. & Empl. § 3-501(b)). "'[E]mploy' means to engage an individual to work . . . 'Employ' includes: (i) allowing an individual to work; and (ii) instructing an individual to be present at a work site.'" *Id.* (quoting Md. Code Ann., Lab. & Empl. § 3-101(c)). Maryland courts have held that even out-of-state employers may be liable under the MWPCL if they "direct[ ] . . . [the] employee to go to a work site in Maryland." *Id.*

In Maryland, "unless an intent to the contrary is expressly stated, acts of the legislature will be presumed not to have any extraterritorial effect." *Chairman of Bd. of Trustees of Emp. Ret. Sys. v. Waldron*, 285 Md. 175, 183–84, 401 A.2d 172, 177 (1979). The MWPCL does not "contain[] specific language indicating an intent to apply to work performed outside the state." *Boyd v. SFS Commc'ns, LLC*, No. 15-cv-3068-PJM, 2021 WL 1430723, at *9 (D. Md. Apr. 15, 2021).[5] But, as one court has noted, "[t]he Court of Appeals of Maryland has not had occasion to decide directly how the presumption against extraterritoriality applies in the context of the Maryland wage laws." *Poudel v. Mid Atl. Pros., Inc.*, No. 21-cv-1124-TDC, 2022 WL 345515, at *3 (D. Md. Feb. 4, 2022) (citing *Cunningham v. Feinberg*, 107 A.3d 1194, 1197–98 (Md. 2015)). In *Poudel,* the Court noted that both state and federal courts have allowed Maryland wage claims to proceed where the employee is primarily engaged in work out-of-state but also did work in Maryland on a limited basis. *Id.* (citing cases). Thus, in this case, the Court must determine whether Defendant Edgy Bees employed Plaintiff in Maryland or if the facts

---

[5] The Offer Letter contains a Maryland choice-of-law clause. ECF No. 1-1 at 2. However, Maryland courts have "declined to link the issue of choice of law to the question of whether a particular state's wage laws apply." *Poudel*, 2022 WL 345515, at *5 (citing *Cunningham*, 107 A.3d at 1203–04). This is because "[a]lthough the cause of action assumes the existence of some sort of underlying contract, it does not sound *per se* in contract." *Cunningham*, 107 A.3d at 1203–04.

surrounding Plaintiff's employment "sufficiently connect [his] work to Maryland such that the presumption against extraterritoriality does not apply." *Id.*

Plaintiff alleges that one of Defendant Edgy Bees' principal places of business is in Gaithersburg, Maryland, ECF No. 1 ¶ 2, and Plaintiff was hired to "work out of [Defendant Edgy Bees'] Gaithersburg, Maryland office[,]" ECF No. 1-1 at 1. The Offer Letter also included a provision that Plaintiff "shall be reimbursed for up to $12,000 per year for flights to and from Washington, D.C., and meals and accommodations in Washington, D.C." ECF No. 1-1 at 1. However, the Complaint contains no allegations that Plaintiff actually traveled to or worked in Maryland—even on one occasion. Plaintiff was a resident of Arizona at the relevant time. ECF No. 1 ¶ 1. Plaintiff refers to travel expenses he undertook during his employment, but he does not allege that he traveled to Maryland or undertook any work in Maryland. *See id.* ¶ 27.[6]

Thus, Plaintiff has failed to allege that Edgy Bees "employed" him in Maryland or that his position had such a connection to Maryland that the presumption against extraterritoriality of the MWPCL does not apply. While "[t]he threshold for establishing employment in Maryland under the MWPCL is relatively low[,]" *Hausfeld v. Love Funding Corp.*, 131 F. Supp. 3d 443, 455 (D. Md. 2015), a plaintiff must at least allege that some of his work occurred in Maryland, *see id.* at 465 ("All that is required is that the individual work to some extent in Maryland."). Otherwise, "all employees of any company based in Maryland, even a multinational corporation, would potentially be able to invoke the MWPCL, even if they work only at offices or worksites in other states or countries and have never been to Maryland." *Poudel*, 2022 WL 345515, at *4.

---

[6] The court in *Poudel*, 2022 WL 345515, at *5, also noted that, with the advent of frequent remote work, "there may be examples of work by individuals physically located outside of Maryland that could arguably be considered as work within the state." The court suggested that regular video conferences with Maryland employees could be one example of work done "in" Maryland. *Id.* Here, Plaintiff makes no allegations about any work done "in" Maryland, not even virtual work.

Therefore, the Court will dismiss Plaintiff's MWPCL claim. However, the dismissal will be without prejudice to Plaintiff's ability to amend the Complaint to include factual allegations about travel to or work done in Maryland or to allege violations of another state wage law.[7]

### B.  Montgomery County Code Claim

Defendant Edgy Bees next argues that Count VIII, violation of Montgomery County Code ("MCC") Section 27-19, must be dismissed because the MCC has no extraterritorial effect. ECF No. 13-1 at 10. Plaintiff argues that discriminatory employment decisions were made in Maryland and so the MCC applies. ECF No. 19 at 8.

 "[A] person that is subjected to a discriminatory act prohibited by the county code may bring and maintain a civil action against the person that committed the alleged discriminatory act [.]" Md. Code Ann., State Gov't § 20-1202; *see also Edgewood Mgmt. Corp. v. Jackson*, 212 Md. App. 177, 218, 66 A.3d 1152, 1176 (2013) (explaining that Section 20-1202 of the Maryland Code is an "enabling statute" under which a plaintiff may "premise[] an alleged violation of [a county code]"). Section 27-19 of the MCC prohibits discriminatory employment practices. *See Haas v. Lockheed Martin Corp.*, 396 Md. 469, 481, 914 A.2d 735, 742 (2007). As relevant here, Section 27–19(a) "prohibits employers from 'discriminat[ing] against any individual with respect to compensation, terms, conditions, or privileges of employment' because of the individual's race." *Belfiore v. Merch. Link, LLC*, 236 Md. App. 32, 44–45, 180 A.3d 230, 237 (2018) (quoting MCC § 27–19(a)(1)(A)).

Maryland courts have specified that the MCC provides relief for employment discrimination occurring within Montgomery County. *Tinoco v. Thesis Painting, Inc*., No. 16-cv-752-GJH, 2017 WL 52554, at *5 (D. Md. Jan. 3, 2017) (citing *Edgewood Mgmt. Corp. v.*

---

[7] Plaintiff requested leave to allege that Defendant Edgy Bees violated Arizona's wage claim statute in the event that this claim is dismissed. ECF No. 19-1 at 8 n.2.

*Jackson*, 66 A.3d 1152, 1173 (2013); *Washington Suburban Sanitary Comm'n v. Phillips*, 994 A.2d 411, 423-24 (2010)); *see also Edwards Sys. Tech. v. Corbin*, 379 Md. 278, 294, 841 A.2d 845, 854 (2004) (reasoning that Prince George's County's analogue law covers "only discrimination occurring in Prince George's County by an employer with a significant presence in Prince George's County" because otherwise, "it would not be a 'local' law and thus would be unconstitutional under" the Maryland Constitution).  Thus, this Court has previously decided that a plaintiff could move forward with her MCC claim when "her allegations together support the inference that at least one of the job sites at which she was harassed was located in Montgomery County, Maryland." *Tinoco*, 2017 WL 52554, at *5.

Plaintiff argues that Edgy Bees' discriminatory employment decisions, such as his termination, occurred within Montgomery County, even if Plaintiff was based elsewhere. ECF No. 19 at 8. Plaintiff cites to out-of-circuit case law to argue that a discriminatory employment decision can occur in one state, even if the effects are felt in another. *See, e.g.*, *Rohn Padmore, Inc. v. LC Play Inc.*, 679 F. Supp. 2d 454, 465 (S.D.N.Y. 2010) (finding that plaintiff satisfied jurisdictional requirements of New York state human rights law when "the allegedly discriminatory decision to terminate [plaintiff's] employment was made in New York City" and "the termination was commenced in New York City when e-mails were sent from [the] New York City office" even if plaintiff "felt the effects of the allegedly discriminatory actions outside of New York.").

However, Plaintiff fails to make any allegations in the Complaint that discriminatory employment decisions were made in Montgomery County. In each allegation of discriminatory conduct, Plaintiff specifies that a discriminatory practice or decision was made by Defendant Kaplan. *See* ECF No. 1 ¶¶ 27, 45, 49, 74, 81. In particular, Plaintiff alleges that "Kaplan was

prejudice[d] and was targeting him." *Id.* ¶ 51. However, Plaintiff also asserts that Kaplan is a resident of Israel who "spent 5–10 business days" in Maryland "prior to COVID and at relevant times." *Id.* ¶ 5. It is entirely unclear from the Complaint where Defendant Kaplan was located during the alleged discriminatory conduct at issue. Plaintiff makes no connection between Defendant Kaplan's discriminatory behavior and Montgomery County such that the Court can infer that at least some of it "occurred" within Montgomery County.

The Complaint does not sufficiently alleged that any discriminatory employment decisions occurred in Montgomery County. Therefore, the Court will grant the Motion to Dismiss as to this count, without prejudice to Plaintiff's ability to amend the Complaint.

### C. False Claims Act Claim

Finally, Defendant Edgy Bees argues that Count IX, retaliation in violation of the False Claims Act, must be dismissed because Plaintiff has failed to allege that he engaged in protected activity. ECF No. 13-1 at 11. Plaintiff responds that he has adequately alleged that he took part in protected activity. ECF No. 19 at 10.

The False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, includes a "whistleblower provision" which "provides that an employee 'shall be entitled to all relief necessary to make [him] whole, if [he] is discharged, demoted, suspended, threatened, harassed, or in any manner discriminated against in the terms and conditions of employment because of lawful acts done by [him] in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.'" *Eghrari-Sabet v. ENT, Allergy, & Asthma Ctr. PC*, No. 19-cv-2055-GJH, 2020 WL 833083, at *6 (D. Md. Feb. 20, 2020) (quoting 31 U.S.C. § 3730(h)); *see also United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 200 (4th Cir. 2018) (quoting 31 U.S.C. § 3730(h)(1)). As the Fourth Circuit has explained:

> [T]o sufficiently plead a § 3730(h) retaliation claim and thus survive a motion to dismiss, a plaintiff must allege facts sufficient to support a "reasonable inference" of three elements: (1) he engaged in protected activity; (2) his employer knew about the protected activity; and (3) his employer took adverse action against him as a result.

*United States ex rel. Grant*, 912 F.3d at 200 (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 433 (4th Cir. 2015)). "As to the first element, § 3730(h) defines two types of protected activity--acts 'in furtherance of an [FCA action]' (the 'first prong'), or 'other efforts to stop 1 or more [FCA violations]' (the 'second prong')." *United States ex rel. Grant*, 912 F.3d at 201 (quoting 31 U.S.C. § 3730(h)(1)). At issue here is the second prong, "efforts to stop 1 or more violations" of the FCA. *See* ECF No. 19-1 at 9.

The Fourth Circuit has adopted a standard of "objective reasonableness" in judging whether a plaintiff has met this prong. "Under this standard, an act constitutes protected activity where it is motivated by an objectively reasonable belief that the employer is violating, or soon will violate, the FCA." *United States ex rel. Grant*, 912 F.3d at 201. Observing possible violations and "[r]ais[ing] concerns" to management constitutes an "effort to stop" a potential FCA violation. *Id.* at 202 (internal citation omitted).

"The FCA imposes liability on any person who 'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval [to the government].'" *Eghrari-Sabet*, 2020 WL 833083, at *6 (quoting 31 U.S.C. § 3729(a)(1)(A)). "It similarly allows suit against anyone who 'knowingly makes . . . a false record or statement material to a false or fraudulent claim.'" U*.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 728 (4th Cir. 2010) (quoting § 3729(a)(1)(B)). When "a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the

12

defendant's representations misleading with respect to the goods or services provided."

*Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 187, 136 S. Ct. 1989, 1999, 195 L.

Ed. 2d 348 (2016). The United States Supreme Court has explained this "implied certification"

theory as a basis for liability when:

> [First], the claim does not merely request payment, but also makes specific
> representations about the goods or services provided; and second, the
> defendant's failure to disclose noncompliance with material statutory,
> regulatory, or contractual requirements makes those representations misleading
> half-truths.

*Universal Health Servs., Inc.*, 579 U.S. at 190. "The materiality standard is demanding" because

the FCA "is not 'an all-purpose antifraud statute' . . . or a vehicle for punishing garden-variety

breaches of contract or regulatory violations." *Id.* at 194 (quoting *Allison Engine Co. v. U.S. ex

rel. Sanders*, 553 U.S. 662, 672, 128 S. Ct. 2123, 2130, 170 L. Ed. 2d 1030 (2008)). "There is a

difference between a false statement sufficient to support a claim of fraud, on the one hand, and

honest disagreements, routine adjustments and corrections, and sincere and comparatively minor

oversights, on the other." *U.S. ex rel. Owens*, 612 F.3d at 734.

Importantly, "[a]llegations of regulatory violations are not enough 'in the absence of

*actual fraudulent conduct*.'" *Skibo on behalf of United States v. Greer Lab'ys, Inc.*, 841 F. App'x

527, 534 (4th Cir. 2021) (quoting *United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d

694, 702 (4th Cir. 2014) (emphasis in original)). Though "proving a violation of § 3729 [of the

FCA] is not an element of a § 3730(h) cause of action," a plaintiff must identify a "plausible case

that what he observed was part of an FCA violation." *Carlson v. DynCorp Int'l LLC*, 657 F.

App'x 168, 174 (4th Cir. 2016) (quoting *Graham Cty. Soil & Water Conservation Dist. v. U.S.

ex rel. Wilson*, 545 U.S. 409, 416 n.1, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005)). Thus, a

complaint must identify with "particularity *how* or *which provisions* . . . might have been

violated." *Carlson*, 657 F. App'x at 174 (emphasis in original). Additionally, the complaint must then "sufficiently allege how the practice could amount to fraud and thereby support an objectively reasonable belief that the company was violating the FCA." *Id.* "The plaintiff's actions need not lead to a viable FCA action, but they must 'have a nexus to an FCA violation.'" *Eghrari-Sabet*, 2020 WL 833083, at *6 (quoting *United States ex rel. Grant*, 912 F.3d at 202).

In the Complaint, Plaintiff alleges that "[e]ach time Edgy Bees certified completion of a milestone [under its contract], invoiced the US government and was paid, knowingly not in compliance with the [Federal Acquisition Regulation] and [Defense Federal Acquisition Regulation Supplement] regulations of the contract, Edgy Bees was defrauding the U.S. government by claiming compliance." ECF No. 1 ¶ 52. Plaintiff alleges that Edgy Bees made false implied staffing certifications, ECF No. 1 ¶¶ 57, 58, that it failed to disclose that information would be transferred to and from Israel, *id.* ¶¶ 59, 60, that it failed to comply with facility access regulations, *id.* ¶¶ 52, 53, and that it intended to hide its foreign ownership, *id.* ¶ 69. Plaintiff also alleges that Edgy Bees falsely certified that it did not intend to work outside of the Maryland office when registering as a federal contractor. *Id.* ¶¶ 70, 72. Plaintiff also alleges that Edgy Bees gave incorrect information to a third-party that was assisting Edgy Bees with gaining security clearances. *Id.* ¶¶ 63, 66.

Plaintiff alleges that these factual allegations amount to violations of Federal Acquisition Regulations, false implied certification, and false representations of compliance. *See id.* ¶¶ 59, 70, 72. Plaintiff asserts that at the time of his termination, "most of Edgy Bees' engineering, development, and invention work remained in violation." *Id.* ¶ 57.

However, missing from the Complaint are specific allegations of fraudulent conduct connected to the government's decision to pay Edgy Bees. First, as to allegations of fraudulent

"implied certification," Plaintiff must specifically allege how Edgy Bees' made "specific representations about the goods or services requested" and how the failure to disclose noncompliance "makes those representations misleading half-truths." *Universal Health Servs., Inc.*, 579 U.S. at 190. Plaintiff must also allege how Edgy Bees' implied certifications were "material conditions" of payment. *See id.* Second, as to allegations of regulatory non-compliance, Plaintiff must allege that he did more than "merely express[ing] concern about regulatory non-compliance[.]" *United States ex rel. Grant*, 912 F.3d at 202. Plaintiff must specifically allege how this noncompliance was fraudulent. *See Carlson*, 657 F. App'x at 174 (a plaintiff must "show how the government would be acting to its detriment" in working with the defendant).

Additionally, it is unclear from the Complaint what type of work Edgy Bees was doing for the United States government and why the asserted violations were "material" to that work. Plaintiff makes many references to classified and sensitive information and associated regulations, but he fails to specify if Edgy Bees was working with classified or sensitive material. *See* ECF No. 1 ¶¶ 53, 63. Similarly, Plaintiff also vaguely references contractual requirements, *id.* ¶¶ 62, 68, but fails to cite specific contractual provisions—let alone argue that such contractual violations were "material" to the contract. *Compare United States ex rel. Grant*, 912 F.3d at 194 (plaintiff engaged in protected activity when he alleged that he "observed three specific practices that purportedly violated the FCA[,]" such as certifying "repairs that did not meet [ ] requirements" and using "uncalibrated and uncertified tools, in violation of the subcontract's requirements.").[8]

---

[8] Defendant Edgy Bees denies that these regulations are even applicable to the contract at issue. *See* ECF No. 13-1 at 14, 17. Plaintiff does not respond to these arguments. Defendant also included the contract in the partial Motion to Dismiss. *See* ECF No. 13-3. Though the Court may review the contract because it was "integral" to the Complaint's

Overall, Plaintiff has failed to make connections between the alleged violations of either the regulations or the contract and an "objectively reasonably belief" that Edgy Bees was engaged in fraudulent conduct. *See, e.g.*, *United States ex rel. Potter v. CASA de Maryland*, No. 16-cv-0475-PX, 2018 WL 4733733, at *4 (D. Md. Oct. 2, 2018) (dismissing a complaint when plaintiff "fails to plausibly aver how her concerns regarding CASA's I-9 procedures support an objectively reasonable belief that CASA was about to violate the FCA by failing to disclose the I-9 deficiencies to the Government."). Conclusory statements that Edgy Bees did not meet "minimum compliance" and it "intended to defraud" the government, ECF No. 1 ¶¶ 59, 63, are not enough. *See Carlson*, 657 F. App'x at 174 (noting that a court is not bound to accept legal conclusions that a defendant violated Federal Acquisition Regulations).

Because Plaintiff has failed to show that he engaged in a protected activity, the Court does not need to address the other elements. *See United States ex rel. Grant*, 912 F.3d at 200 (listing the other elements as "(2) his employer knew about the protected activity; and (3) his employer took adverse action against him as a result."). The Court will dismiss the FCA retaliation count without prejudice to Plaintiff's ability to file an amended complaint addressing these deficiencies.

Therefore, the Court grants Defendant Edgy Bees' partial Motion to Dismiss. Counts V, VIII, and IX against Edgy Bees are dismissed without prejudice.

## IV.    DEFENDANT KAPLAN'S MOTION TO DISMISS

Defendant Kaplan has filed a Motion to Dismiss in which he argues that service of process was insufficient and must be quashed. *See* ECF No. 22. Kaplan also argues that the Complaint must be dismissed for lack of personal jurisdiction. For the reasons discussed below,

---

allegations, *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999), it is unnecessary in light of the Plaintiff's pleading deficiencies.

the Court will grant the Motion to Dismiss as to Defendant Kaplan, and thus Counts V

(Maryland Wage Payment and Collect Law claim), VI (Section 1981 discrimination claim), and

VII (Section 1981 retaliation claim) as to Defendant Kaplan are dismissed.

### A. Insufficient Service

Defendant Kaplan first argues that process was improper and therefore must be quashed,

or, in the alternative, the Complaint must be dismissed for insufficient process. ECF No. 22-1 at

11. As relevant here, a summons must be "signed by the clerk" and "bear the court's seal." Fed.

R. Civ. P. 4(a)(1)(F), (G). Kaplan asserts that the summons he received lacks the clerk's

signature and the court's seal. ECF No. 22-1 at 11. Kaplan also provides a photocopy of the

summons he received, which indeed seems to be missing both requirements. *See* ECF No. 22-3

at 1; *see also* ECF No. 22-2 ¶ 7 (Kaplan Decl.). Plaintiff concedes that the service was deficient

and requests that the Court quash service and allow him additional time to serve Kaplan. ECF

No. 24-1 at 3; *see also* ECF No. 24-2 at 1.

Generally, when "'the first service of process is ineffective, a motion to dismiss should

not be granted, but rather the [c]ourt should treat the motion . . . as one to quash the service of

process and the case should be retained on the docket pending effective service.'" *Grant v.

Prince George's Cnty. Dep't*, No. 15-cv-2433-DKC, 2016 WL 3541239, at *4 (D. Md. June 29,

2016) (quoting *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir. 1983) (internal

citations and quotations omitted)). The Court will grant the joint request to quash service.

However, because the Court will dismiss the Complaint for lack of personal jurisdiction, as noted

below, the Court declines to consider whether Plaintiff should be granted additional time to

effect service.

### B. Personal Jurisdiction

Defendant Kaplan also argues that the Complaint must be dismissed in its entirety because the Court lacks personal jurisdiction over him. ECF No. 22 at 13; *see Combs*, 886 F.2d at 676 (When personal jurisdiction is challenged, "the burden [is] on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence."); *see also Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 228 (4th Cir. 2019) ("To enter a judgment that adjudicates the rights of a party, a federal court must have personal jurisdiction over that party."). The Fourth Circuit has explained that:

> Personal jurisdiction requires valid service of process that comports with due process. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). That is, unless the party consents to jurisdiction, there must be (1) service that complies with the requirements of an applicable rule or statute, as well as (2) "minimum contacts" with the forum so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice," *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

*Hawkins*, 935 F.3d at 228. In cases with a nonresident defendant, the Court has explained that:

> Personal jurisdiction over a nonresident defendant is proper when "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993). "In applying Maryland's long-arm statute, federal courts often state that '[the] statutory inquiry merges with [the] constitutional inquiry.'" *Dring v. Sullivan*, 423 F.Supp.2d 540. 544 (D.Md.2006) (citing *Carefirst of Maryland. Inc.*, 334 F.3d 390, 396–97; *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132. 135 (4th Cir.1996) (additional citations omitted)).

> However, personal jurisdiction under Maryland's long-arm statute is also required. *Mackey v. Compass Mktg. Inc.*, 391 Md. 117, 892 A.2d 479, 493 n.6 (Md. 2006) (stating that it is not permissible to simply dispense with analysis under the long-arm statute)).

*Malebranche v. Johnson*, No. 15-cv-452-GJH, 2015 WL 4396745, at *2 (D. Md. July 16, 2015). Additionally, a "plaintiff must specifically identify the Maryland statutory provision that authorizes jurisdiction, either in his complaint or in opposition to a Rule 12(b)(2) motion." *Id.*

18

As relevant here, Maryland's "long-arm" provision authorizes "personal jurisdiction over a person, who directly or by an agent . . . [t]ransacts any business or performs any character of work or service in the State" or "[c]auses tortious injury . . . outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State[.]" Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1), (4). Importantly, personal jurisdiction is only authorized in either case if the "cause of action aris[es]" from those transactions or injuries. *Id.* § 6-103(a). An exercise of personal jurisdiction must also comport with constitutional due process. "Specific personal jurisdiction is present when the claim is 'related to or arises out of a defendant's contacts with the forum.'" *Malebranche v. Johnson*, 2015 WL 4396745, at *4 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (internal quotations and citations omitted)).

In the Complaint, Plaintiff alleges that the Court has personal jurisdiction over Defendant Kaplan because Kaplan, before the pandemic, "regularly spent 5–10 business days working in Gaithersburg, Maryland, thus purposefully availing himself of the laws and benefits of Maryland." ECF No. 1 ¶ 5. Plaintiff also alleges that all Defendants "have committed multiple tortious acts within the state of Maryland, thus availing themselves to the jurisdiction of this state." *Id.* However, Plaintiff does not identify the Maryland statutory provision that authorizes personal jurisdiction over Defendant Kaplan. There are also no factual allegations in the Complaint that provide a basis for personal jurisdiction under Maryland's long arm statute, as there are no specific factual allegations showing that Plaintiff's claims "arise" from Defendant Kaplan's alleged relationship to Maryland. Plaintiff also fails to offer any facts that support a

finding that an exercise of personal jurisdiction would be consistent with constitutional due process.

Defendant Kaplan has provided a declaration stating that he is a citizen and resident of Israel. ECF No. 22-2 ¶ 2 (Kaplan Decl.). Kaplan also declares that, during Plaintiff's period of employment, Kaplan "was only in Maryland for three days total, all during one visit in 2019." *Id.* ¶ 4. Further, Kaplan "was never in the state of Maryland during 2017, 2018, or 2020" and "in 2021, [he] spent eight days in Maryland." *Id.* Kaplan also asserts that he never met Plaintiff during any Maryland visit, nor did any of his alleged actions or communications regarding Plaintiff occur while Kaplan was in Maryland. *Id. ¶* 5.

Even setting aside service of process issues, Plaintiff has failed to show that an exercise of personal jurisdiction over Defendant Kaplan would comport with due process. Plaintiff fails to respond to any of Defendant Kaplan's arguments regarding personal jurisdiction, nor does Plaintiff contest any of the facts in Kaplan's declaration. Overall, Plaintiff's only reference to personal jurisdiction is contained in two conclusory sentences at the beginning of the Complaint. "When a plaintiff fails to oppose a motion to dismiss, a district court is 'entitled, as authorized, to rule on the . . . motion and dismiss [the] suit on the uncontroverted bases asserted' in the motion." *White v. Wal Mart Stores, Inc.*, No. 14-cv-31-ELH, 2014 WL 1369609, at *2 (D. Md. Apr. 4, 2014) (quoting *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004)). Similarly, when a plaintiff fails to respond to an argument, he "abandons [the] claim." *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (*citing Mentch v. Eastern Savings Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997)); *see also Benahmed v. BAE Sys. Tech. Sols. & Servs., Inc.*, No. 12-cv-01974-AW, 2012 WL 5426432, at *6 (D. Md. Nov. 6,

2012) ("Plaintiff appears to have abandoned these claims as his Opposition contains no arguments with respect to Count V.").

Here, Plaintiff does not respond to Defendant's arguments or declaration regarding persons jurisdiction, nor did Plaintiff sufficiently allege facts that establish the appropriateness of this Court exercising personal jurisdiction over Defendant Kaplan in the Complaint. Thus, Defendant Kaplan's Motion to Dismiss for lack of personal jurisdiction will be granted. *See also White*, 2014 WL 1369609, at *2 (granting a motion to dismiss when plaintiff failed to oppose because the court "detect[s] no obvious lack of merit in defendant's Motion.").[9]

## V.     CONCLUSION

For the reasons above, the Court grants both Motions to Dismiss. Thus, Counts V, VIII, and IX are dismissed against Defendant Edgy Bees. Counts V, VI, VII are dismissed against Defendant Kaplan, and he is dismissed from the action. Both dismissals are without prejudice, and Plaintiff may file an amended complaint within 21 days. A separate Order follows.


Dated: May   26, 2022                                    /s/
                                                    GEORGE J. HAZEL
                                                    United States District Judge

---

[9] In light of the Court's dismissal of the Complaint for lack of personal jurisdiction, there is no need to separately discuss Defendant Kaplan's argument that Count V should be dismissed against him for failure to state a claim. *See* ECF No. 22-1 at 23.