IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

VINCENT HEARN,

            Plaintiff,

    v.

EDGY BEES INC., and ADAM KAPLAN,

            Defendants.

Civil Action No. 8:21-cv-02259

**MEMORANDUM IN SUPPORT OF DEFENDANT EDGY BEES, INC.'S
PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Dated:  August 31, 2022

*/s/ Thomas P. Gies*
Thomas P. Gies (D. Md. Bar No. 17412)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Tel.: (202) 624-2500
Fax: (202) 628-5116
Email: TGies@crowell.com

*Attorney for Defendants*
*Edgy Bees Inc. and Adam Kaplan*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND .................................................................................... 1

LEGAL STANDARDS ............................................................................................. 3

ARGUMENT ............................................................................................................ 4

I.   The False Claims Act Retaliation Claim Still Fails Because Hearn Added No "Specific Allegations of Fraudulent Conduct Connected to the Government's Decision to Pay Edgy Bees." ................................................... 4

    A.   The Amended Complaint Fails to Plead Any of the Three Required Elements of an FCA Retaliation Claim. ........................................... 5

        1.   Hearn's § 3730(h) Claim Should Be Dismissed Because Hearn Fails To Allege That He Engaged In Protected Activity. ...................................................................................... 5

        2.   Hearn's § 3730(h) Claim Should Be Dismissed Because Edgybees Had No Knowledge of Any Alleged Protected Activity. .................................................................................. 17

        3.   Hearn Has Failed to Allege the Requisite Causal Connection Between His Complaints and His Termination. ................. 20

    B.   The FCA Claim Should Be Dismissed with Prejudice. .................................... 21

II.  The Montgomery County Code Claim Still Fails Because It Has No Extraterritorial Effect and Hearn Still Alleges All Decisions Were Made by Kaplan in Israel. ..................................................................................... 23

CONCLUSION ......................................................................................................... 26

DCACTIVE-68200008.10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allison Engine Co. v. U.S. ex rel. Sanders,*
   553 U.S. 662, 128 S. Ct. 2123, 170 L. Ed. 2d 1030 (2008)......................................................6

*Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.,*
   367 F.3d 212 (4th Cir. 2004) ...................................................................................................8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .........................................................................................................3, 9, 10

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...............................................................................................................3, 4

*Bing v. Brivo Sys., LLC,*
   959 F.3d 605 (4th Cir. 2020) ...................................................................................................3

*Bliss v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,*
   132 F. Supp. 3d 676 (D. Md. 2015) ........................................................................................23

*Carlson v. DynCorp Int'l LLC,*
   657 F. App'x 168 (4th Cir. 2016) ....................................................................................5, 7, 10

*Clark Cnty. Sch. Dist. v. Breeden,*
   532 U.S. 268 (2001) (per curiam) ...........................................................................................21

*United States ex rel. Cody v. ManTech Int'l, Corp.,*
   746 F. App'x 166 (4th Cir. 2018) ...........................................................................................21

*United States ex rel. Complin v. N. Carolina Baptist Hosp.,*
   818 F. App'x 179 (4th Cir. 2020) ...........................................................................................20

*Drager v. PLIVA USA, Inc.,*
   741 F.3d 470 (4th Cir. 2014) .................................................................................................22

*Eberhardt v. Integrated Design & Constr., Inc.,*
   167 F.3d 861 (4th Cir. 1999) ............................................................................................7, 18

*Edwards Sys. Tech. v. Corbin,*
   379 Md. 278, 841 A.2d 845 (2004).........................................................................................25

*Glynn v. Impact Science & Tech., Inc.,*
   807 F. Supp. 2d 391 (D. Md. 2011) .........................................................................................9

*United States ex rel. Grant v. United Airlines Inc.*,
    912 F.3d 190 (4th Cir. 2018) ............................................................... 5, 6, 11, 15

*United States ex rel. Hopper v. Anton*,
    91 F.3d 1261 (9th Cir. 1996) ............................................................... 18

*Lemon v. Myers Bigel, P.A.*,
    985 F.3d 392 (4th Cir. 2021) ............................................................... 3, 4

*United States ex rel. Lockyer v. Haw. Pac. Health*,
    490 F. Supp. 2d 1062 (D. Haw. 2007) ............................................................... 18

*Mann v. Heckler & Koch Defense, Inc.*,
    630 F.3d 338 (4th Cir. 2010) ............................................................... 6

*Miller v. Maryland Dep't of Nat. Res.*,
    813 F. App'x 869 (4th Cir. 2020) ............................................................... 3

*Nolte v. Cap. One Fin. Corp.*,
    390 F.3d 311 (4th Cir. 2004) ............................................................... 22

*Skibo on behalf of United States v. Greer Lab'ys, Inc.*,
    841 F. App'x 527 (4th Cir. 2021) ............................................................... 5, 6, 15, 18

*United States ex. rel. Parks v. Alpharma, Inc.*,
    No. 11-1498, 2012 WL 3291705 (4th Cir. Aug. 14, 2012) ............................................................... 19

*Perry v. Kappos*,
    489 F. App'x 637 (4th Cir. 2012) ............................................................... 21

*United States ex rel. Branscome v. Blue Ridge Home Health Servs., Inc.*,
    No. 7:16CV00087, 2018 WL 1309734 (W.D. Va. Mar. 13, 2018) ............................................................... 4

*United States ex rel. Potter v. CASA de Maryland*,
    No. CV PX-16-0475, 2018 WL 4733733 (D. Md. Oct. 2, 2018) ............................................................... 10, 13, 19, 20

*Proctor v. Wells Fargo Bank, N.A.*,
    289 F. Supp. 3d 676 (D. Md. 2018) ............................................................... 22

*United States ex rel. Rostholder v. Omnicare, Inc.*,
    745 F.3d 694 (4th Cir. 2014) ............................................................... 6

*Salagh v. Virginia Int'l Univ.*,
    No. 1:16-CV-1321-GBL-TCB, 2017 WL 976620 (E.D. Va. Mar. 13, 2017) ............................................................... 7, 10

*Sicilia v. Boeing Co.*,
    775 F. Supp. 2d 1243 (W.D. Wash. 2011) ............................................................... 9

*Tinoco v. Thesis Painting, Inc.*,
　　No. 16-cv-752-GJH, 2017 WL 52554 (D. Md. Jan. 3, 2017)...............................................25

*Twigg v. Triple Canopy, Inc.*,
　　No. 1:10CV122 (JCC), 2010 WL 2245511 (E.D. Va. June 2, 2010)............................. 18, 21

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
　　579 U.S. 176 (2016) ......................................................................................... 6, 13, 16

**Statutes**

31 U.S.C. 3730(h)(1)..................................................................................................5

31 U.S.C. § 3729(a)(1)(A) & (B)...............................................................................6

31 U.S.C. § 3730(h)(1).............................................................................................5

31 USCA § 3729 .......................................................................................................6

False Claims Act (FCA) ...................................................................................*passim*

Montgomery County Code §27-19 ....................................................... 1, 2, 25, 26

**Other Authorities**

AFFARS 5352.204-9000(b) ......................................................................................8

DFARS 252.204-7012................................................................................................11

FAR 5352.204-9000..................................................................................................8

FAR 52.215.6.................................................................................................. 15, 16

FAR 252.204-7012........................................................................................... 11, 19

FAR 5352.204-9000......................................................................................... 7, 19

FRCP Rule 8 .................................................................................................. 10, 13

FRCP Rule 12(b)(6) ............................................................................................. 1, 22

FRCP Rule 12(c)........................................................................................................22

## INTRODUCTION

Plaintiff Vincent Hearn's ("Plaintiff" or "Hearn") First Amended Complaint ("Amended Complaint") fails to remedy the fundamental deficiencies this Court identified with the two causes of action it dismissed for failure to state a claim pursuant to FRCP Rule 12(b)(6): Count VIII under the Montgomery County Code §27-19 and Count IX for retaliation under the False Claims Act ("FCA"). With respect to Count IX, Hearn still does not plausibly allege that he engaged in protected activity as required to state a claim for FCA retaliation. As with his original complaint, missing from the Amended Complaint are "specific allegations of fraudulent conduct connected to the government's decision to pay Edgy Bees." ECF 27 ("Op.") at 14. The Amended Complaint also fails again to plausibly allege either of the other two required elements of a *prima facie* case: employer knowledge of the protected conduct and causation of an adverse employment action. Likewise, Count VIII fails because the Amended Complaint still does not state a claim under the Montgomery County Code, which lacks extraterritorial effect. Hearn again fails to allege that any discriminatory decisions against him – all of which he attributes to Israeli resident and Edgybees CEO, Adam Kaplan ("Kaplan") – occurred in Montgomery County. Accordingly, Hearn's Counts VIII and IX should be dismissed with prejudice, as any further amendment at this stage would be futile.

## FACTUAL BACKGROUND

Edgybees is a government contractor that provides geo-registration and augmented reality of aerial video in real time for use by defense, public safety and critical infrastructure command centers. Hearn was employed as Edgybees' Global Business Development Director from November 1, 2019 until January 7, 2021, when his employment was terminated. Amended Complaint ¶¶ 17, 87. Hearn filed the original complaint in this action on September 2, 2021, alleging nine causes of action against Edgybees, and naming Edgybees' CEO, Adam Kaplan, in

three of those claims.  ECF 4.  On October 7, 2021, Edgybees filed a Partial Motion to Dismiss the Complaint for failure to state a claim as to Counts V, VIII and IX.  ECF 13.  On May 26, 2022, this Court granted Edgybees' motion to dismiss in its entirety, without prejudice and granting leave to amend.  ECF 27 (Op.), 28 ("Order").  On July 18, 2022, Hearn filed an Amended Complaint reasserting the same nine causes of action against Edgybees and naming Kaplan in the same three as he did in the original complaint.

Hearn's Count IX alleges that Edgybees violated the FCA by retaliating against him for engaging in protected activity when "he tried to prevent one or more violations of the False Claims Act by Edgy Bees."  Amended Complaint ¶ 150.  While the Amended Complaint is hardly a model of clarity, Hearn appears to base his retaliation claim on his belief that Edgybees failed to comply with several requirements that Hearn alleges were part of a STRATFi contract (the "Contract") that Edgybees held with the U.S. Government.  These purported violations include that Edgybees failed to comply with facility access regulations (*id.* ¶¶ 58-59, 62; the "Facility Clearance Issue"), failed to disclose that information would be transferred to and from Israel and made false implied staffing certifications (*id.* ¶¶ 44-45, 60-61, 63-68; the "U.S. Personnel Issue"), gave incorrect information to a third-party that was assisting Edgybees with gaining security clearances (*id.* ¶¶ 69, 73-76; the "FSO Forms Issue"), falsely certified that it did not intend to work outside of the Maryland office and "that it did not have an immediate owner and was owned by a foreign entity" when registering as a federal contractor (*id.* ¶¶ 77-79; the "Work Location Issue"), and that he refused to sign a form verifying that information was not being sent to Israel (*id.* ¶¶ 82-85; the "Refusal to Sign an Export Compliance Questionnaire Issue").

- 2 -

Hearn's Count VIII alleges that Edgybees violated the Montgomery County Code §27-19 by "discriminating against Plaintiff on the basis of his race and/or color."  Amended Complaint ¶ 142.  In Hearn's Opposition to Edgybees' first motion to dismiss Count VIII, he confirmed that his claim rests entirely on his supposed "assert[ion] that the discriminatory acts occurred in Montgomery County because the decisions were made in Defendant's Gaithersburg, Maryland headquarters. . ."  ECF 19-1  at 8 (hereinafter "Opp'n").  This Court dismissed Count VIII because his original complaint made no such assertion.  Op. at 10-11.  In the Amended Complaint, Hearn still attributes all alleged "discriminatory acts" to Edgybees' CEO, Adam Kaplan, who Hearn concedes lived in Israel at all relevant times.  Amended Complaint ¶ 4.  These alleged discriminatory acts include Kaplan's denial of Hearn's  request to work remotely and his subsequent termination. *Id*. at ¶¶ 55, 87, 144.

## LEGAL STANDARDS

"To survive a motion to dismiss, a plaintiff must plead enough factual allegations 'to state a claim to relief that is plausible on its face.'"  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a complaint "tender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice) (citation omitted).  "[I]mportantly, this rule 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do.' A complaint must contain '[f]actual allegations [sufficient] to raise a right to relief above the speculative level ....'"  *Id*. (internal citations omitted; brackets in original) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"The facts alleged must, in other words, nudge [the plaintiff's] claim 'across the line from conceivable to plausible.'"  *Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 399 (4th Cir. 2021) quoting *Twombly*, 550 U.S. at 570.  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Miller v. Maryland Dep't of Nat. Res.*, 813 F. App'x 869, 874 (4th Cir. 2020) quoting *Iqbal*, 556 U.S. at 678.

## <u>ARGUMENT</u>

**I.    The False Claims Act Retaliation Claim Still Fails Because Hearn Added No "Specific Allegations of Fraudulent Conduct Connected to the Government's Decision to Pay Edgy Bees."**

This Court dismissed Hearn's original FCA retaliation claim because he failed to plausibly plead that he engaged in protected activity – the first of three required elements.  Op. at 14-16.  Specifically, his original complaint did not include "specific allegations of fraudulent conduct connected to the government's decision to pay Edgy Bees."  *Id*. at 14.  The Amended Complaint is no different.  It simply repeats or rephrases the same threadbare, inaccurate, conclusory assertions that Edgybees violated various contractual and regulatory provisions, but it still does not connect those asserted violations to Edgybees' claims for payment, let alone allege why those violations were material to the government's payment decision.  In short, Hearn again fails to plead facts to demonstrate that he held a reasonably objective belief that Edgybees was violating the FCA.  .

In fact, the Amended Complaint does not address Edgybees' arguments in its first motion to dismiss that the Contract does not even require Edgybees to comply with most of the regulations upon which Hearn relies and that Hearn in several instances mischaracterizes those provisions.  Hearn could not have held an objectively reasonable belief that Edgybees was defrauding the government by violating inapplicable regulations.[1]

---

[1]  Hearn's pleadings were so facially defective that the Court found it unnecessary to rule on these arguments, but they remain unanswered by Hearn in the Amended Complaint and further demonstrate that Hearn could not have held an objectively reasonable belief that Edgybees was submitting false claims to the government.  *See* Op. at 15 n.8.

As such, the Amended Complaint's changes do not come close to "nudg[ing the] claim 'across the line from conceivable to plausible'" and his FCA claim should thus be dismissed for the same reasons as before. *Lemon*, 985 F.3d at 399 (quoting *Twombly*, 550 U.S. at 570); *United States ex rel. Branscome v. Blue Ridge Home Health Servs., Inc.*, No. 7:16CV00087, 2018 WL 1309734, at *6 (W.D. Va. Mar. 13, 2018) (dismissing § 3730(h) claim because "the court declines to substitute [Plaintiff's] *conclusory characterizations* . . . for her specific allegations . . . which fail to support an inference [of protected activity].") (emphasis added).

### A.   The Amended Complaint Fails to Plead Any of the Three Required Elements of an FCA Retaliation Claim.

Section 3730(h) of the FCA imposes liability on an employer that retaliates against an employee "because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. 3730(h)(1).  To establish a *prima facie* case of retaliation pursuant to § 3730(h), a plaintiff must allege facts sufficient to show that: (1) he engaged in protected activity under the FCA, (2) the employer knew of his protected activity, and (3) terminated him because of it.  *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 200 (4th Cir. 2018).  Failure to properly plead any one of the three *prima facie* elements of § 3730(h) mandates dismissal of the plaintiff's claim.  *Carlson v. DynCorp Int'l LLC*, 657 F. App'x 168, 170, 172 (4th Cir. 2016) (affirming dismissal for failure to establish the first element of a *prima facie* retaliation case).  The Amended Complaint fails to plausibly plead any of these three required elements.

### 1.   Hearn's § 3730(h) Claim Should Be Dismissed Because Hearn Fails To Allege That He Engaged In Protected Activity.

FCA protected activity includes efforts to stop one or more violations of the FCA.  31 U.S.C. § 3730(h)(1).  This requirement is subject to an objective reasonableness standard.  *Skibo on behalf of United States v. Greer Lab'ys, Inc.*, 841 F. App'x 527, 534 (4th Cir. 2021).

- 5 -

> A belief is objectively reasonable when the plaintiff alleges facts
> sufficient to show that he believed his employer was violating the
> FCA, that this belief was reasonable, that he took action based on
> that belief, and that his actions were designed to stop one or more
> violations of the FCA. However, while the plaintiff's actions need
> not `lead to a viable FCA action' . . . they must still have a nexus
> to an FCA violation.

*Id.* (quoting *Grant*, 912 F.3d at 201-02).

The FCA creates liability for any person who, *inter alia*, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval [to the government or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A) & (B).  A claim under the FCA includes four elements: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter [knowledge]; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a "claim").  *United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 700 (4th Cir. 2014); 31 USCA § 3729.  A claim for payment may support an implied certification theory of FCA liability when:

> [First], the claim does not merely request payment, but also makes specific
> representations about the goods or services provided; and second, the
> defendant's failure to disclose noncompliance with material statutory,
> regulatory, or contractual requirements makes those representations
> misleading half-truths.

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 190 (2016).

Importantly, allegations of regulatory violations are not enough to support an FCA violation "in the absence of *actual fraudulent conduct.*"  *Skibo*, 841 F. App'x at 534 (quoting *Rostholder,* 745 F.3d at 702 (emphasis in original) (internal citations and quotation marks omitted)); *Mann v. Heckler & Koch Defense, Inc.*, 630 F.3d 338, 347 (4th Cir. 2010) (citation omitted) (the "FCA requires fraud, not mere regulatory violations" and holding that plaintiff's investigative activities were not protected because they had no reasonable possibility of

uncovering fraud); *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 869 n.2 (4th Cir. 1999) (same). "'[W]ithout fraud, there can be no FCA action' or violation." *Carlson*, 657 F. App'x at 174 (affirming dismissal of FCA retaliation claim for failure "to raise even a plausible case that what [plaintiff] observed was part of an FCA violation.").

"Thus, a complaint must identify with 'particularity *how* or *which provisions* [of the contract or FAR] might have been violated.'" ECF 27, Op. at 13-14 (quoting *Carlson*, 657 F. App'x at 174 (emphasis in original)); *see also Salagh v. Virginia Int'l Univ.*, No. 1:16-CV-1321-GBL-TCB, 2017 WL 976620, at *5 (E.D. Va. Mar. 13, 2017) ("[I]n order for Plaintiff's conduct to constitute protected activity, she must have specifically alleged fraudulent claims for federal funds and not merely address general misconduct."). "Additionally, the complaint must then 'sufficiently allege how the practice could amount to fraud and thereby support an objectively reasonable belief that the company was violating the FCA.'" *Id.*

In addition, and critically, an alleged statutory, regulatory, or contractual noncompliance "must be material to the government's payment decision." *Id.* "The materiality standard is demanding" because the FCA "is not 'an all-purpose antifraud statute' . . . or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id.* at 194 (quoting *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 672, 128 S. Ct. 2123, 2130, 170 L. Ed. 2d 1030 (2008)).

In the Amended Complaint, Hearn still fails to plead a *prima facie* case of the protected activity element for any of his alleged concerns.

<strong>a.    Hearn Fails to Allege That He Engaged In Any Protected<br>Activity Related to the Facility Clearance Issue.</strong>

In the Amended Complaint, Hearn broadly alleges that the Contract required Edgybees to obtain a US Secret Facility Clearance, and that Edgybees violated that requirement. Amended

Complaint ¶¶ 58-59.  In support of this allegation, Hearn points to FAR Clause 5352.204-9000, which relates to the handling of classified information on U.S. Government installations and overseas.  *Id.* at ¶ 62.  Hearn also alleges that he "disclosed and cautioned Edgybees management" about these issues.  *Id.* at ¶¶ 60, 62.

These conclusory allegations fail to demonstrate that Hearn held an objectively reasonable belief that Edgybees was violating the FCA.  Just as with the original complaint, the Amended Complaint does not identify where the Contract actually requires Edgybees to obtain a facility clearance – because it does not.  And Hearn never states whether or not Edgybees has a facility clearance, how or why FAR 5352.204-9000 applies, or how this issue relates to the submission of a false claim to the Government.

Hearn's vague reference to FAR 5352.204-9000 as governing facility clearance for working on classified programs still provides no explanation as to what Edgybees did to allegedly violate the Contract or engage in fraudulent conduct material to a false claim.  Amended Complaint ¶ 62.  That is because FAR 5352.204-9000 does not impose a requirement to obtain a facility clearance in the first place.  *See* ECF 13-3, Declaration of Thomas P. Gies in support of Edgybees' Partial Motion to Dismiss, Exhibit A at 79 (the "Contract").[2]  FAR 5352.204-9000, referenced only in a modification to the contract, describes security procedures a contractor must take *in the event* that operations involve classified information on a government

---

[2] A true and correct copy of documents relevant to this dispute contained in the STRATFi contract between Edgybees and the U.S. Government, with proprietary pricing and deliverable information not relevant to Hearn's allegations redacted, was attached to the Gies declaration filed in support of the Memorandum in support of Edgybees' partial motion to dismiss the original complaint.  The Amended Complaint refers to and necessarily relies on these documents, and their terms are integral to the Amended Complaint's allegations.  *See, e.g.*, Amended Complaint ¶¶ 58-60, 63, 65-66, 75.  They are thus properly before the Court on this Partial Motion to Dismiss.  *See Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 235 (4th Cir. 2004).

installation.  The clause expressly contemplates that this may occur on an installation where the contractor is *not* required to have a facility security clearance.  *See* AFFARS 5352.204-9000(b).  The very clause upon which Hearn's theory of noncompliance relies, therefore, fails to support him.

In addition, Hearn does not allege that the Contract itself is classified nor identify any provision in the Contract to support his conclusory assertion that the Contract requires handling classified information.  Instead, he merely asserts that the MO-9 drone program is "highly sensitive."  *See* Amended Complaint ¶ 59.  As the Court observed regarding the original complaint, "Plaintiff makes many references to classified and sensitive information and associated regulations, but he fails to specify *if Edgy Bees* was working with classified or sensitive material."  Op. at 15 (citing ECF 1 ¶ 53 – restated in Amended Complaint ¶ 59) (emphasis added). "[I]t is unclear from the Complaint what type of work Edgy Bees was doing for the United States government and why the asserted violations were "material" to that work." *Id.*  Nothing has changed in the Amended Complaint.  Hearn has merely added or moved around words without addressing the fundamental deficiencies in his allegations.  *See, e.g.* Amended Complaint ¶¶ 58-59, 62.

Hearn's failure to identify any actual contract or regulatory violation by Edgybees is fatal to his ability to plead protected activity, and thus to his § 3730(h) claim.  *See Glynn v. Impact Science & Tech., Inc.*, 807 F. Supp. 2d 391, 410 (D. Md. 2011) (fact that plaintiff could not identify any contractual requirement supporting his claim demonstrates his actions were not objectively reasonable and required dismissal of claim on summary judgment); *see also Sicilia v. Boeing Co.*, 775 F. Supp. 2d 1243, 1250-51 (W.D. Wash. 2011) (employee's belief that employer engaged in fraud was not objectively reasonable because he failed to identify

contractual or regulatory requirements supporting his theory); *see also Iqbal*, 556 U.S. at 678 (mere recitals of the elements of a claim supported by conclusory statements are wholly insufficient to avoid dismissal).

Even assuming that the concerns Hearn alleges might somehow implicate a contractual violation, that would still be insufficient to demonstrate that Hearn held an objectively reasonable belief that Edgybees was defrauding the government.[3]  Hearn makes no attempt to show how his facility clearance concerns did or would have led to the submission of a false claim for payment by Edgybees, nor that those concerns were material to payment.  *See United States ex rel. Potter v. CASA de Maryland*, No. CV PX-16-0475, 2018 WL 4733733, at \*4 (D. Md. Oct. 2, 2018) (dismissing retaliation claim and noting that "[a]lthough [the plaintiff] may be able to show that the I-9s were deficient and that Defendants' proposed methods to fix them were less than ideal, *this is a different matter than whether any of [the defendant's] three representations to the Government at issue . . . at all related to [the] I-9s*.") (emphasis added). Count IX therefore fails at the outset.

---

[3] Hearn's various allegations that Edgy Bees' supposed contractual and regulatory violations were "defrauding the U.S. government" (Amended Complaint ¶ 58), that he "reasonably believed that Edgy Bees officials including Mr. Kaplan intended to defraud the US government" (Amended Complaint ¶ 70), or that Edgybees was "raising the potential to defraud the US government" (Amended Complaint ¶ 75) are conclusions unsupported by plausible factual statements, the Contract, or the regulations they depend upon, and are thus woefully short of what is required by FRCP Rule 8.  *Iqbal*, 556 U.S. 662, 678; *see Salagh*, 2017 WL 976620 at \*5 ("While Plaintiff does make allegations of fraud and refers to this fraud throughout her submitted documents, she fails allege sufficient facts, if taken as true, which would allow the Court to infer that Defendant VIU submitted a false or fraudulent claim to the government."); *see also Carlson*, 657 F. App'x at 174 (plaintiff "failed to raise even a plausible case that what he observed was part of an FCA violation, and thus his alleged belief that DynCorp was violating the FCA was not reasonable.")

**b.**      **Hearn Fails to Allege That He Engaged In Any Protected Activity Related to the U.S. Personnel Issue.**

Hearn alleges that a "Work Plan and Private Funding Investment schedule" provided to the Government prior to the award of the Contract" informed the US government that in FY2020, Edgybees would hire classified US engineers and multiple other positions in the United States to work exclusively on this contract" but that during performance Edgybees cut the hours of its US-born engineer and "transferred most of the work to the team in Israel." Amended Complaint ¶ 65. Hearn further alleges that he

> disclosed to Mr. Glassberg and Ms. Taichler his concerns that these contract requirements were not being met, and that, pursuant to FAR Clause 252.204-7012 Safeguarding Covered Defense Information and Cyber Incident Reporting is included in the contract. Edgy Bees needed to hire a US engineering team to work on the sensitive unclassified parts of the contract. In violation of the contract and FAR requirements, Edgybees never disclosed to the US government that information would be transferred back and forth to Israel."

*Id.* at ¶¶ 65-66.

When dismissing Hearn's original FCA claim, this Court found that "Plaintiff . . . vaguely references contractual requirements, [citation omitted] but fails to cite specific contractual provisions, let alone argue that such contractual violations were 'material' to the contract." Op. at 15 (citing in part ECF 1 ¶¶ 62 [now Amended Complaint ¶ 68] and *comparing Grant*, 912 F.3d at 194 (plaintiff engaged in protected activity when he alleged that he "observed three specific practices that purportedly violated the FCA[,]" such as certifying "repairs that did not meet [ ] requirements" and using "uncalibrated and uncertified tools, in violation of the subcontract's requirements")). As Hearn's allegation has not changed, the Court's reasoning compels dismissal again.

As Edgybees noted previously, the Contract contains no requirement to hire U.S. personnel nor a prohibition against providing contract information to non-U.S. citizens or hiring

- 11 -

such personnel, and does not require all engineers working on it to be Top Secret Cleared.  *See generally* ECF 13-3, Ex. A (Contract).  In fact, DFARS 252.204-7012, which Hearn cites to without explanation (again), does not impose any such restrictions or requirements; rather, it provides a series of cyber incident reporting requirements.  Hearn again fails to connect this clause to the "violations" he alleges or demonstrate any basis for his purported belief that Edgybees was submitting false claims.

Nor do Hearn's amendments to this set of allegations move the needle.  The Amended Complaint describes the aim of the Contract and asserts that "the development and progress of the award requires access to the highly classified US Air Force ATO network, necessitating the need for engineers on the project to be ONLY US citizens with a US Top Secret Clearances."  Amended Complaint ¶ 44.  It alleges that Edgybees developed a list of milestones to be achieved in order to receive payment from the government under the Contract, and asserts that "by invoicing the government, Edgy Bees certified that it incurred the costs they claimed were associated with that milestone, and that they did so while complying with ITAR and EAR regulations." *Id.* at ¶ 45.[4]

But just like with Hearn's original complaint, these additions come without a single citation to a provision in the Contract or an explanation of how any regulation that was material to the Contract milestones was violated, much less what these milestones required.  And Hearn fails to explain why these unsupported allegations about top secret clearance and US citizenship

---

[4] Hearn also added a similarly vague, conclusory sentence to the end of ¶ 68, that "Edgy Bees' nevertheless made false certifications to the US government that its use of U.S. government funds was in compliance with applicable national security laws and regulations."  This again begs the question:  What exactly were the "applicable" national security laws and regulations, and how were they being violated?

were material to the government's payment of the invoices that he himself states were issued on the basis of the completion of milestones.

To the extent that Hearn is asserting that he believed Edgybees was making an "implied false certification," such a claim requires the existence of a relevant contractual term or regulation that defendant has violated; that is material to payment; and a *specific representation* in the claim for payment that renders the defendant's failure to disclose the noncompliance a misleading half-truth. *Escobar,* 579 U.S. at 190. Without *any* of these details, Hearn's allegations cannot meet the objective reasonableness standard and fall well short of plausibly alleging that these invoices contained false implied certifications. *See Potter*, 2018 WL 4733733, at *4 (dismissing retaliation claim because the plaintiff "fail[ed] to plausibly aver how her concerns regarding [an alleged regulatory violation] support[ed] an objectively reasonable belief that [the defendant] was about to violate the FCA by failing to disclose the [violations] to the Government.").

### c.    Hearn Fails to Allege That He Engaged in Any Protected Activity Related to the FSO Forms Issue.

Hearn alleges that, in or around July 2020, Edgybees hired an unnamed, third party Facility Security Officer (FSO) consulting company to "assist in securing a Facility Clearance and employee Secret Clearances for the US team" in connection with the Contract. Amended Complaint ¶¶ 69-70. Hearn alleges that "[i]n September 2020, Mr. Hearn sent an email to Mr. Glassberg identifying his serious concerns regarding the information the FSO was requesting, and what Edgybees would need to provide to comply." *Id.* at ¶ 73. He alleges that, "[s]uspecting that information in the documents" provided to the consulting company concerning Edgybees' foreign-owned or non-U.S. citizen owners, board members, and investors "would be either incorrect or incomplete, thereby raising the potential to defraud the US government, in October

2020, Mr. Hearn disclosed to Edgy Bees officials Mr. Glassberg and Ms. Taichler that providing false information was not acceptable and would place Edgy Bees in breach of its government contract." *Id.* at ¶ 75.

Hearn's allegations concerning incomplete information he "suspected" Edgybees submitted to a third-party consulting company suffer from the same fatal pleading defects as in the original complaint – the absence of any connection to a contractual requirement or claims for payment submitted to the U.S. Government.  Instead, these allegations concern Hearn's suspicions about Edgybees' dealings with a private company.

Hearn's amendments do not cure these basic, fatal defects.  Indeed, Hearn's revisions in the Amended Complaint are replete with the same flaws.  For example, Hearn adds subparts (c)-(e) to the former ¶ 63, now Amended Complaint ¶ 69, but his vague allegations that "the contract expressly required the use of US engineers" and that Edgybees' conduct "was inconsistent with the applicable regulations" lacks any support in the actual Contract, as noted above in subsection (b).  *See generally* ECF 13-3, Ex. A (Contract).

Once again, not only does Hearn fail to connect his allegations to any contractual requirement, he also fails once again to show that his concerns were material to the Government's payments to Edgybees under the Contract.  Indeed, Hearn offers only "his training" as support for his broad claims that "information regarding the citizenship of the owners is material to the Defense Department", transfer of work to Israel "would be materially adverse to U.S. government interests" and that "it was of vital national interest that work performed in defense technology be done in the United States in Sensitive Compartmented Information Facilities (SCIFs)."  Hearn's alleged training as to what, in a broad sense, matters to

- 14 -

the government hardly supports a finding of FCA materiality, much less with respect to the government's payment decision on Edgybees' invoices.[5]

Hearn's unsupported ideas about what he thinks the Contract should have required of Edgybees and what should be material do not show that he held an objectively reasonable belief that Edgybees breached the Contract or violated the FCA.  Without any factual allegations supporting a connection to a false claim, the FSO Forms Issue cannot support a claim of protected activity under § 3730(h).

> **d.     Hearn Fails to Allege That He Engaged in Any Protected Activity Related to the Work Location Issue.**

Hearn also alleges that "Edgy Bees, Inc falsely certified to the US Government in its annual Representations and Certifications filing ("Reps & Certs") to the U.S. government that it 'DID NOT INTEND' to do any work on any government contract in a different place of performance than the address listed on its SAM registration" and claims that "[t]his representation was false and a violation of FAR Clause 52.215.6 Place of Performance."  *Id.* at ¶ 79.  Notably, Hearn does not allege that he reported or complained about this concern to anyone at Edgybees.

Hearn's work location concern looks no different in the Amended Complaint than it did in the original version.  Hearn again fails to tether this allegation to any requirement in the Contract.  Indeed, FAR 52.215-6 is not incorporated in the Contract in the first place.  *See* ECF 13-3, Ex. A (Contract).  Nor does Hearn explain how a purported certification with that FAR

---

[5] Hearn also refers to another FAR clause, 52.204.17 concerning Ownership & Control, and alleges that it, too, is material to the "Defense Department."  Amended Complaint ¶ 77.  But he again fails to draw any connection between this clause and the Contract, much less Edgybees' claims for payments in discussing his concern about statements to the FSO consulting company.  *Id.* ¶¶ 77-78.

clause relates to Edgybees' claims for payment or could render those claims false, or how it is material to payment under the Contract. *See Escobar*, 579 U.S. at 194.

Even assuming that FAR 52.215-6 somehow applied here, it only requires contractors to identify the location where the contractor *intends* to perform under the contract. It does not require that the contractor in fact perform the work at that specific location. Once again, Hearn provides no factual basis for his speculative, conclusory assertion that Edgybees certified that it intended to perform under the Contract at any location other than that which was listed on their System for Award Management (SAM) registration or how that was material to payment. To the extent Hearn bases his § 3730(h) retaliation claim on the allegations contained in paragraph 79 of the Amended Complaint, it fails as a matter of law.

Last, Hearn does not allege that he reported, complained about, or tried to stop the alleged false certification. As a result, he cannot plausibly state a claim that he engaged in protected activity in connection with these observations. *See Skibo*, 841 F. App'x at 534; *Grant*, 912 F.3d at 202 (protected activity requires that the plaintiff both held an objectively reasonable belief his employer was violating the FCA and that "he took action based on that belief, and that his actions were designed to stop one or more violations of the FCA").

        **e.**    **Hearn Fails to Allege That He Engaged in Any Protected Activity Related to the Refusal to Sign an Export Compliance Questionnaire**

Finally, Hearn alleges that Mr. Crouse, an Edgybees employee, sent him "a form verifying to an integration partner" – a.k.a. "another government contracting company" (ECF 19-1 ("Opposition")) at 12) – "that Edgy Bees was not sending information to Israel, and that there were firewalls in place to prevent such from happening." Amended Complaint ¶ 84. He alleges that "Mr. Crouse asked Mr. Hearn to verify the information on the form" but that he refused to complete it "because he could not verify the information and suspected that firewalls had never

been put in place." *Id.* at ¶ 85.  He alleges that "[u]pon information and belief, Mr. Hearn's refusal was relayed to Mr. Kaplan." *Id.*

Hearn's allegations of his Refusal to Sign an Export Compliance Questionnaire, even more so than his other allegations, do not even hint at a connection to Edgybees' contract with the government, much less a purported FCA violation or effort by Hearn to stop one.  *See* Amended Complaint ¶¶ 82-85 (¶¶ 75-78 in original complaint).  As Hearn did not substantively amend these allegations in the Amended Complaint, they again fail to state a claim.

*First*, Hearn only alleges that the "form" was being prepared for submission to "an integration partner" (Amended Complaint ¶ 84), *not* the U.S. Government.  *Second*, the "reasons for his refusal to" sign the questionnaire Hearn alleges to have "specifically stated" to Mr. Crouse were "because he could not verify the information and *suspected* that firewalls had never been put in place."  Amended Complaint ¶ 85 (emphasis added).  That is legally insufficient: "Such speculation does not nudge the claim from the possible to the plausible."  *Simmons*, 2021 WL 4806336, at *6.

Because the Amended Complaint fails to allege that the completion of this questionnaire involved any requirement in Edgybees' contract with the government or its claims for payment, nor how it would be material to payment, Hearn could not have held an objectively reasonable belief that his refusal to sign the questionnaire was an effort to stop an FCA violation.  Thus, these allegations, too, cannot support a *prima facie* case of FCA protected activity.

### 2. Hearn's § 3730(h) Claim Should Be Dismissed Because Edgybees Had No Knowledge of Any Alleged Protected Activity.

Hearn's § 3730(h) claim should also be dismissed because it fails to plead the second required element – his Amended Complaint fails to allege facts sufficient to establish that Edgybees *knew* about his alleged protected activity, *i.e.* that he was acting to stop one or more

violations of the FCA.  *See Twigg v. Triple Canopy, Inc.*, No. 1:10CV122 (JCC), 2010 WL 2245511, at *6 (E.D. Va. June 2, 2010) (dismissing § 3730(h) claim for failure to plead any facts regarding the second element of the *prima facie* case - the defendant's knowledge of the plaintiff's alleged protected activity); *Skibo*, 841 F. App'x at 534 (describing the two forms of FCA-protected activity).  Notice is required to show that the employer possessed the "retaliatory intent necessary to establish a violation of § 3730(h)." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269-70 (9th Cir. 1996) ("unless the employer is aware the employee is investigating fraud, the employer could not possess the retaliatory intent necessary to establish a violation of § 3730(h)"); *Eberhardt*, 167 F.3d at 868 (superseded by statute on other grounds).

At least two separate reasons compel this conclusion.  *First,* any retaliation claim based on the Work Location Issue fails because Hearn does not allege he ever voiced his alleged concerns to anyone at Edgybees.  *See United States ex rel. Lockyer v. Haw. Pac. Health*, 490 F. Supp. 2d 1062, 1083-84 (D. Haw. 2007) (to demonstrate notice, there must be evidence that the employee specifically "voiced a concern about fraud on the federal government.").  Nor does raising concerns about statements made to non-governmental entities put an employer on notice of protected activity of efforts to prevent or stop fraud on the government, as with the Export Compliance and FSO Forms issues.

*Second*, Hearn's own characterization of the comments he made to Edgybees management about the Facility Clearance Issue, the U.S. Personnel Issue, the FSO Forms Issue, and the Refusal to Sign an Export Compliance Questionnaire Issue frame his comments as concerns about contractual and regulatory compliance – without any implication of fraud or the submission of a false claim for payment to the government.  That is not enough to provide notice of protected activity, *i.e.* the reporting of suspected fraudulent conduct.

Regarding the Facility Clearance Issue, Hearn merely alleges that he "disclosed to Mr. Glassberg a specific FAR regulation (FAR Clause 5352.204-9000) . . . for which Edgy Bees was violating . . ." and characterizes his "disclos[ure]" as regarding violations of "*the FARs, DFARs and the STRATFi contract itself*." Amended Complaint ¶¶ 60, 62 (emphasis added). When allegedly raising the U.S. Personnel Issue with Edgybees, Hearn only says that he "disclosed to Mr. Glassberg and Ms. Taichler his *concerns that these contract requirements were not being met*, and that, pursuant to FAR Clause 252.204-7012 Safeguarding Covered Defense Information and Cyber Incident Reporting is included in the contract." *Id.* at ¶ 65 (emphasis added). When discussing his concerns about the FSO Forms Issue with Edgybees management, Hearn only alleges that he raised "serious concerns" about what the FSO – not the U.S. Government – was requesting and stated that providing the FSO with false information was "not acceptable and would place Edgy Bees *in breach of its government contract*." *Id.* at ¶ 73, 75-76. And when discussing his comments about the Refusal to Sign an Export Compliance Questionnaire Issue, Hearn simply says he "refused to complete the form because he could not verify the information and suspected that firewalls had never been put in place." *Id.* at ¶ 85.

These allegations are inadequate. "A plaintiff's statements 'clearly couched in terms of concerns and suggestions' to her employer, as opposed to 'threats or warnings of FCA litigation,' are insufficient to constitute notice." *Potter*, No. CV PX-16-0475, 2018 WL 4733733, at *4 (dismissing FCA retaliation claim for failure to plead notice element) (quoting *United States ex. rel. Parks v. Alpharma, Inc.*, No. 11-1498, 2012 WL 3291705, at *8 (4th Cir. Aug. 14, 2012)). Even if Hearn were correct about or reasonably believed any of these alleged "violations" (which he was not), Hearn's comments about contractual and regulatory compliance are not sufficient to notify Edgybees that Hearn was complaining about the submission of fraudulent claims for

payment to the government. *See Potter*, 2018 WL 4733733, at *5 (despite complaining about perceived regulatory violations, the plaintiff failed "adds no facts to show how her statements should have alerted CASA to any concerns [she] had regarding a false or fraudulent claim.")

Put simply, because Hearn does not allege any facts to demonstrate that Edgybees knew of his alleged protected activity, his FCA retaliation claim fails.

### 3.   Hearn Has Failed to Allege the Requisite Causal Connection Between His Complaints and His Termination.

The Court need not reach the element of causation in light of Hearn's failure to plead either protected activity or notice. Even if it were to address causation, though, Hearn alleges no facts to support a causal connection between any of his alleged concerns and his termination. Hearn offers no direct evidence – such as statements by the decision makers – that his comments about the Facility Clearance Issue, the U.S. Personnel Issue, the FSO Forms Issue, or the Refusal to Sign an Export Compliance Questionnaire Issue triggered his termination several months later. And, since he doesn't allege he ever voiced concern about the Work Location Issue, no causal connection to his termination is possible.

In the absence of such facts, Hearn must rely on temporal proximity alone to establish the requisite causal nexus under § 3730(h). *See United States ex rel. Complin v. N. Carolina Baptist Hosp.*, 818 F. App'x 179, 185 (4th Cir. 2020) (affirming grant of motion to dismiss § 3730(h) claim for failure to plead causation element where plaintiff failed to allege either "direct evidence of causation" or "close temporal proximity"). "Generally, the temporal nexus between two events does not alone give rise to an inference of causation. For that to happen, the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' must be 'very close.'" *United States ex rel. Cody v. ManTech Int'l, Corp.*,

746 F. App'x 166, 180 (4th Cir. 2018) quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (internal quotation marks omitted).

Hearn makes no such showing here. *First*, the Amended Complaint wholly fails to allege when Hearn voiced his concerns to Edgybees about either the Facility Clearance Issue or the U.S. Personnel Issue. Absent any allegation attempting to establish any nexus between Hearn's comments about those two issues and his termination, his § 3730(h) claim must fail. *See Twigg*, 2010 WL 2245511 at *6 (dismissing § 3730(h) claim for failure to plead any facts regarding the defendant's knowledge of the plaintiff's protected activity or to support "the conclusory allegation that Defendant 'retaliated against [the plaintiff for engaging in protected activity.'")

*Second*, Hearn admits that he was not terminated until January 7, 2021 – three to four months after Hearn alleges he raised the FSO Forms Issue with Edgybees management in September and October of 2020. This three to four-month gap between Hearn's comments about the FSO Forms Issue and his termination – without more – independently compels the dismissal of Hearn's § 3730(h) claim. *See Perry v. Kappos*, 489 F. App'x 637, 642 (4th Cir. 2012) (noting the Fourth Circuit has previously held a three to four-month gap in temporal proximity is insufficient to create a causal connection). Hearn attempts to close this temporal gap by discussing his Refusal to Sign an Export Compliance Questionnaire in December 2020, but those allegations have no relation to Hearn's other complaints, and are deficient in their failure to plausibly plead either that they constituted protected activity or that Hearn's refusal to sign the form notified Edgybees that he was attempting to stop an FCA violation.

### B.   The FCA Claim Should Be Dismissed with Prejudice.

Hearn's FCA claim should be dismissed for a second time, but this time without leave to amend. When granting a motion to dismiss under Rule 12(b)(6), "[a] district court's denial of leave to amend is appropriate when (1) the amendment would be prejudicial to the opposing

party; (2) there has been bad faith on the part of the moving party; or (3) the amendment would

have been futile." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citation and

internal quotation marks omitted) (reviewing dismissal under FRCP 12(c) and noting the

standard is the same for 12(b)(6)).   A proposed amendment is futile when it would not cure the

deficiencies of the complaint.   *See Nolte v. Cap. One Fin. Corp.*, 390 F.3d 311, 317 (4th Cir.

2004).

Here, further amendment to Hearn's FCA claim would be futile.   Both Edgybees' first

motion to dismiss and the Court's memorandum opinion explained in detail the multiple, basic

defects in Hearn's original FCA retaliation claim.   Yet Hearn did not substantively amend his

allegations or failed to do so in a manner that would cure the manifold defects in the original

pleading of this count.   *See Proctor v. Wells Fargo Bank, N.A.*, 289 F. Supp. 3d 676, 692 (D. Md.

2018) ("Despite that guidance [identifying pleading deficiencies with citations], Proctor failed to

cure her pleading deficiencies. Thus, considering Proctor's failure to state a claim despite the

helpful input she received, dismissal with prejudice is appropriate." (citation omitted)).   The

Court's Opinion instructed Hearn to specifically identify contractual provisions that Edgybees

violated, identify specific regulations and how they were applicable to the Contract, and

plausibly allege why those violations were material to the Government's payments to Edgybees.

*See generally*, Op. at 14-16.   Hearn did none of this.   Hearn's allegations still lack contractual

support, and the only basis he provides for his belief that these "violations" were material to the

Government's payments to Edgybees is "his training."   Instead, Hearn mostly made non-

substantive stylistic changes, moved terms around, and added more words to his inadequate and

inaccurate allegations of fraud.

Hearn has now had a copy of the Contract since at least October 2021, when Edgybees filed it with its original motion to dismiss. *See* ECF 13-3. If Hearn could not find contractual provisions or regulatory requirements in the Contract to support his allegations in the past eight months, there is no reason to believe another opportunity to amend will change that. *See Bliss v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., 132 F. Supp. 3d 676, 679 (D. Md. 2015) (finding amendment to complaint futile where contractual terms at issue did not support theory of relief). Further amendment would therefore be futile, and would only burden Edgybees with another round of motion practice to yet again defeat his baseless accusations.

## II. The Montgomery County Code Claim Still Fails Because It Has No Extraterritorial Effect and Hearn Still Alleges All Decisions Were Made by Kaplan in Israel.

Hearn only explicitly ties two Edgybees decisions to race discrimination in the Amended Complaint, and he expressly attributes both to Kaplan. *First*, Kaplan allegedly denied Hearn's request to work remotely: "In July 2020, although the company was in a "Remote Work" mode due to COVID, *Mr. Kaplan* denied Mr. Hearn permission to work remotely outside of his home, while accompanying his family on vacation. Yet, the Director of Programs in Maryland, Sheffy Glassberg (Caucasian), was permitted to do so at the same time." Amended Complaint ¶ 55 (emphasis added). *Second*, Kaplan allegedly terminated Hearn on the basis of his race: "On January 7, 2021, *Mr. Kaplan* telephoned Mr. Hearn and terminated his employment with Edgy Bees. . . Defendant [Edgybees] discriminated against Plaintiff in the termination of his employment on the basis of his protected group status." Amended Complaint ¶¶ 87, 144 (emphasis added). But Hearn did not substantively change either of these allegations from the original complaint. And neither is sufficient because there is no plausible allegation in the Amended Complaint that either of these decisions were made by Kaplan in Maryland

Hearn also alleged in his opposition to Edgybees first motion to dismiss that a number of other events described in his complaint constituted adverse actions (in retaliation for his alleged False Claims Act protected activity).  Opposition at 15.  To the extent Hearn asserts that these decisions were also based on his race, he alleges all were made by Kaplan, who was in Israel. Again, Hearn did not substantively change any of these allegations from his original complaint:

- "removing job responsibilities" (ECF 19-1 at 15): "On July 7, 2020, *Mr. Kaplan, in an effort to exclude Mr. Hearn* from the Edgy Bees process of transferring work to Israel without detection by or approval from the U.S. government, sent an email stating that Ms. Taichler would henceforth be in charge of [the FSO and Security Clearance] process." (Amended Complaint at ¶ 67) (emphasis added).

- "posting a vacancy for an employee's position" (ECF 19-1 at 15): "In late October 2020, *at Mr. Kaplan's direction*, Edgy Bees posted a job listing for a position virtually identical to the position then held by Mr. Hearn." (Amended Complaint at ¶ 80) (emphasis added).

- "hiring a replacement" (ECF 19-1 at 15): "In or about December 2020, *at Mr. Kaplan's direction*, Edgy Bees hired a Caucasian employee (Michael Crouse) to replace Mr. Hearn." (Amended Complaint at ¶ 81) (emphasis added).

- "excluding an employee from meetings" (ECF 19-1 at 15): "*Mr. Kaplan intentionally excluded him and asked* Mr. Glassberg and Ms. Maman to handle the transactions."; "Notwithstanding Mr. Hearn's disclosures, *Mr. Kaplan* directed that a) documents provided to the FSO would omit information concerning owners, board members and investors (because some were not U.S. citizens and/or foreign owned entities); and b) Mr. Hearn would be excluded from executive meetings and from the documentation process." (Amended Complaint at ¶¶ 74, 76) (emphasis added).

- "paying Mr. Hearn less commission than he was entitled" (ECF 19-1 at 15): "When Mr. Hearn continued to question his commission amount, Ms. Maman, and [sic] Edgy Bees official, told him that '*It's up to Adam [Kaplan] to decide what he wants to give you.*'" (Amended Complaint at ¶¶ 90) (emphasis added).

Hearn's Montgomery County Code § 27-19 claim fails because his Amended Complaint still does not allege that a single discriminatory employment decision was made against him in Montgomery County.  In fact, he did not make any substantive changes to any of allegations about specific employment decisions, leaving his pleading effectively unchanged on this issue.

As this Court explained, "Maryland courts have specified that the [Montgomery County Code] provides relief for employment discrimination occurring within Montgomery County. . . Thus, this Court has previously decided that a plaintiff could move forward with her MCC claim when 'her allegations together support the inference that at least one of the job sites at which she was harassed was located in Montgomery County, Maryland.'" Op. at 9-10 citing *Tinoco v. Thesis Painting, Inc*., No. 16-cv-752-GJH, 2017 WL 52554, at *5 (D. Md. Jan. 3, 2017); *see also Edwards Sys. Tech. v. Corbin*, 379 Md. 278, 294, 841 A.2d 845, 854 (2004).

This Court dismissed Hearn's Count VIII on this basis, because "Plaintiff fails to make any allegations in the Complaint that discriminatory employment decisions were made in Montgomery County."  Op. at 10. "In each allegation of discriminatory conduct, Plaintiff specifies that a discriminatory practice or decision was made by Defendant Kaplan. . . Plaintiff makes no connection between Defendant Kaplan's discriminatory behavior and Montgomery County such that the Court can infer that at least some of it "occurred" within Montgomery County." *Id.* at 11.

Hearn has not cured this deficiency.  Despite his opportunity to either amend his allegations to address the specific guidance in the Court's Opinion or drop the claim, Hearn did nothing more than reassert identical allegations with only minor stylistic revisions.  The Amended Complaint still contains no allegation that any of the employment decisions he describes were made in Edgybees' Gaithersburg, Maryland headquarters in Montgomery County or by anyone other than Israeli resident Adam Kaplan.  The Amended Complaint accordingly does not state a claim under Montgomery County Code §27-19, which covers only discrimination occurring in Montgomery County.

Additionally, any further amendment to this claim would be futile.  This Court's Opinion provided Hearn with specific guidance regarding the types of factual allegations required to state a claim for relief under the Montgomery County Code, and he changed nothing.  At this point, the record is clear that Hearn attributes the employment decisions at issue to Adam Kaplan, and that Kaplan was in Israel at all relevant times.  Count VIII should accordingly be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Counts VIII and IX against Edgybees, with prejudice.

Dated:  August 31, 2022

Respectfully submitted,

/s/ Thomas P. Gies
Thomas P. Gies (D. Md. Bar No. 17412)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Tel.: (202) 624-2500
Fax: (202) 628-5116
Email: TGies@crowell.com

*Attorney for Defendants*
*Edgy Bees Inc. and Adam Kaplan*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 31st day of August, 2022, the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT EDGY BEES, INC.'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** was served on the following counsel of record, via the Court's CM/ECF system:

Richard R. Renner
Kalijarvi Chuzi Newman & Fitch, P.C.
818 Connecticut Avenue, NW, Suite 1000
Washington, DC 20006
Tel.: (202) 331-9260
Fax: (855) 326-5993
Email: rrenner@kcnlaw.com

*Attorneys for Plaintiff*


Dated:  August 31, 2022                          Respectfully submitted,

                                                 <u>*/s/ Thomas P. Gies*                      </u>
                                                 Thomas P. Gies (D. Md. Bar No. 17412)
                                                 CROWELL & MORING LLP
                                                 1001 Pennsylvania Avenue, N.W.
                                                 Washington, DC  20004-2595
                                                 Tel.: (202) 624-2500
                                                 Fax: (202) 628-5116
                                                 Email: TGies@crowell.com

                                                 *Attorney for Defendants*
                                                 *Edgy Bees Inc. and Adam Kaplan*

- 28 -